UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

JIMMY JONES,

                              Plaintiff,

        v.                                             1:05-CV-1207
                                                        (GJD)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

_____

PETER M. MARGOLIUS, ESQ., for Plaintiff
WILLIAM H. PEASE, Asst. U.S. Attorney for Defendant

GUSTAVE J. DI BIANCO, Magistrate Judge

## MEMORANDUM DECISION AND ORDER

This matter has been referred to me for all further proceedings, including the entry of judgment pursuant to 28 U.S.C. § 636(c), the consent of the parties, and the order of the Honorable Frederick J. Scullin, Jr. dated January 31, 2007. (Dkt. No. 9).

## PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits on July 1, 2002, alleging that he became disabled on September 21, 2001. (Administrative Transcript ("T."), 66-68). Plaintiff's application was denied initially, and a request was made for a hearing. A hearing was held before an Administrative Law Judge ("ALJ") on November 13, 2003. (T. 23-41). In a decision dated December 9, 2003, the ALJ found that plaintiff was not disabled. (T. 14-20). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on July 27, 2005. (T. 5-7).

Plaintiff's brief states that he received a "Fully Favorable Decision on

September 15, 2005 with the onset date of December 10, 2003." It thus appears, that plaintiff is challenging the denial of disability benefits for a closed period of September 13, 2001 to December 10, 2003. Plaintiff's brief also states, however, that "the claimant amended his alleged onset date . . . to December 10, 2003 . . ." (Brief, p. 3).

## CONTENTIONS

Plaintiff's brief is extremely unclear regarding the possible issues that are being raised.[1] The brief contains two paragraphs entitled "Issues" in which counsel argues that the Appeals Council refused to remand the case because the ALJ "failed to clarify" certain medical reports and because "new evidence" required a remand. (Brief, p. 1 and 2). The brief then contains a series of disjointed arguments that appear to claim that certain things need to be clarified, and that the evidence submitted after the ALJ's decision of December 9, 2003 (T. 14) should have caused the Appeals Council to remand this case to the ALJ. Plaintiff's counsel submitted additional records to the Appeals Council which are contained in a "Supplemental Administrative Transcript." (Dkt. No. 6). Counsel argues that this case should be remanded or reversed because of this evidence. (Brief, p. 7).

---

[1]Plaintiff's brief does not comply with General Order 18 of the Northern District of New York. It does not contain a Statement of Facts from the Administrative Transcript. It simply contains a recitation of the findings of the ALJ which are clearly stated in the ALJ's decision. In addition, plaintiff's brief does not contain arguments which are supported by references to the record. General Order 18 clearly requires references to the pages in the Transcript that support plaintiff's arguments. Counsel is advised that future submissions of this type may result in the brief being stricken from the docket.
    This is at least the second brief that Attorney Margolius has submitted to this court which does not comply with General Order 18. See *Snyder v. Commissioner*, 05-CV-1513.

The defendant argues that the Commissioner's determination is supported by substantial evidence in the record, and must be affirmed.

## FACTS

### A.  Non-Medical Evidence and Testimony

Plaintiff was fifty-two years old at the time of the ALJ's hearing, and previously worked for Home Depot as a cashier, carpet specialist, and electrical sales associate. (T. 34, 90).  Plaintiff also worked as a cashier for a sports store, and worked as a forklift operator in a warehouse.  (T. 34).  In a work history report, completed for the Social Security Administration, plaintiff stated that as a sales associate, he would walk and stand for eight hours per day, and would frequently lift objects weighing twenty-five pounds, but would sometimes lift objects weighing one hundred pounds.  (T. 91).

Plaintiff stated that he was able to care for his own personal needs, and also took care of his young son.  (T. 102).  Plaintiff was able to drive himself to doctor's appointments (T. 35), but spent most of his day listening to music, taking medication, and resting because of drowsiness from the medication.  (T. 37, 31).  Although plaintiff was able to prepare meals, he stated that he could not prepare large meals because he could not stand for long periods of time. (T. 103).

Plaintiff attended physical therapy three times per week, and was able to go food shopping once a week. (T. 106).  Plaintiff reported that he was taking three medications: hydrocodone, cyclobenzaprine, and ibuprofen. (T. 32, 110).  Plaintiff testified at the ALJ hearing, that he had been diagnosed with carpal tunnel syndrome during November of 2002 and was diagnosed with diabetes in 1992.  (T. 25-26).

Plaintiff stated that he was not taking any medication for his diabetes and was attempting to control his diabetes with diet only. (T. 26).

Plaintiff stated that he has constant pain in his left leg, and numbness in his left thigh. (T. 27).  He also stated that he was unable to sit for long periods of time because of the pain shooting down his leg. (T. 27).  He estimated that he could sit for only five to fifteen minutes because of his pain.  Plaintiff also testified that he has a bulging disc which presses against his sciatic nerve, giving him pain in his left leg. (T. 28). Plaintiff testified that he also has problems with his hands and his neck. (T. 29, 30). Plaintiff utilizes the medication Flexeril, which makes him groggy, and causes him difficulty concentrating. (T. 31).  Plaintiff testified that his wife performs all of the household chores. (T. 36).

## B.  <u>Medical Evidence</u>

Plaintiff has a treating internist, Dr. Arthur Stevens, who has treated plaintiff for several years beginning in 2001.  (T. 83, 265, 281-283).  Plaintiff has sought treatment from neurologists, and has been examined independently by neurologists in connection with a workers' compensation claim stemming from his employment with Home Depot.

One of plaintiff's treating neurologists, Dr. Jeffrey Burdick, examined plaintiff on December 10, 2002 and March 23, 2003. (T. 173-74, 179-80).  In his December 10, 2002 report, Dr. Burdick commented on an electrodiagnostic study performed by neurologist Sangbock Kim. (T. 179).[2]  Dr. Burdick stated that Dr. Kim found that

---

[2] Dr. Kim's report appears at (T. 212).

plaintiff had polyradiculitis involving plaintiff's cervical, dorsal, and lumbrosacral spine. (T. 179). Dr. Burdick's impression was that plaintiff had multi-level cervical radiculopathy due to degenerative changes in plaintiff's cervical spine. (T. 180). In his March 23, 2003 report, Dr. Burdick stated that plaintiff had chronic pain in multiple areas, but that plaintiff was presently in pain management, and that plaintiff's treatment from a chiropractor was giving him some relief. (T. 174).

Plaintiff was examined by two consultative neurologists during 2002. The first examination was by Dr. Holub. (T. 136-39). Dr. Holub performed extensive testing, and also examined an MRI taken during October of 2001. (T. 136-39). Dr. Holub's examination was related to plaintiff's workers' compensation claim. *Id.* Dr. Holub found that plaintiff was disabled for workers' compensation purposes, but that plaintiff had ***not*** reached maximum medical improvement, and that under New York State guidelines, plaintiff had a moderate partial disability. (T. 138-39). Dr. Holub also stated that plaintiff's " . . . degree of disability is currently total" but that this would "clearly change depending on the results of his myelogram and . . . appropriate therapies." (T. 139).

Approximately four months later, plaintiff had another consultative examination by Dr. Holub. On June 4, 2002, Dr. Holub reported that plaintiff had many complaints of pain. (T. 131-34). Dr. Holub found no radicular pain on straight leg raising in plaintiff's right leg, and mild to moderate tightness with straight leg raising in plaintiff's left leg. Dr. Holub concluded that plaintiff was disabled for workers' compensation purposes, and could not return to his job at Home Depot, since plaintiff

told Dr. Holub that Home Depot did not have jobs that required only a medium exertional ability. (T. 133). Dr. Holub concluded that plaintiff had a mild, partial disability (T. 133), but recommended a "work hardening" program, and believed that plaintiff could perform medium work for eight hours per day. (T. 132).

During late 2001, and early 2002, plaintiff was under the care of neurosurgeon, Dr. Philip Marra. (T. 119, 115). Dr. Marra examined plaintiff three times during 2001, first on October 29, 2001 (T. 120-21), then on November 20th and December 26th, 2001 (T. 119, 118). He also examined plaintiff on February 4, 2002 (T. 117), and again on March 7, 2002 (T. 115). During the October 29, 2001 visit, Dr. Marra found that plaintiff was not in any obvious distress. Dr. Marra also found that plaintiff had signs of lumbar nerve root impingement on the left, secondary to a small disc protrusion at L5, however, the MRI did not show any definite disc herniation or nerve root impingement. (T. 121). Dr. Marra recommended that plaintiff continue physical therapy for his symptoms. (T. 121).

On November 20, 2001, Dr. Marra found that plaintiff remained symptomatic, and that plaintiff's lower back pain had not improved. (T. 119). Dr. Marra found positive straight leg raising signs in plaintiff's left leg at 60 degrees, causing buttock and thigh pain laterally on the left, but found negative straight leg raising on the right. (T. 119). Forward bending was limited to 45 degrees before plaintiff experienced pain. (T. 119). Dr. Marra did not find any nerve impingement upon his examination of an MRI. (T. 119).

In Dr. Marra's February 4, 2002 report, he stated that plaintiff continued to

complain of lower back pain radiating to his left leg. (T. 117).  Straight leg raising sign was positive to 45 degrees on the left in the sitting position, causing the pain to radiate down into plaintiff's left calf. (T. 117).  Straight leg raising was negative on the right, knee and ankle reflexes were "2+", and motor examination revealed "full strength." (T. 117). Dr. Marra noted that he had previously requested authorization for a lumbar myelogram, and would again make this request in order to "proceed with the diagnostic study." (T. 117).  However, Dr. Marra stated that based on the MRI results, he doubted that there was significant disc herniation. (T. 117).

On March 7, 2002,  Dr. Marra stated that he reviewed the "recent" lumbar myelogram and post-myelogram CT scan, finding that plaintiff had a small central L5 disc protrusion. (T. 115).  Dr. Marra found no "clear cut" evidence of nerve root impingement on any of the studies. (T. 115).  Dr. Marra stated that plaintiff was not a candidate for surgery, and instead recommended a work hardening program. (T. 115). Dr. Marra specifically stated that while he did not believe that plaintiff could do his previous work, due to the lifting involved, he "could carry out some type of sedentary work." (T. 115).  Dr. Marra suggested a Functional Capacity Evaluation, and a return to work program which included physical therapy. (T. 115).

Plaintiff was treated by neurologist Dr. Leonardo Martinez between September of 1991and February of 1992 (T. 247-53).  In his September 5, 1991 examination, Dr. Martinez performed extensive testing on plaintiff, including range of motion testing, and a thorough neurological examination. (T. 251).  Dr. Martinez' impression was that plaintiff had a chronic cervical strain with fibromyalgia syndrome, and might have

cervical radiculopathy involving the C5 and C6 nerve root. (T. 251).  He also believed

that plaintiff had vascular headaches resulting from cervical strain, or a

temporomandibular dysfunction (TMJ).  Dr. Martinez recommended MRI testing and

physical therapy including specialized exercises. (T. 251-52).  In his November 14,

1991 report, Dr. Martinez found that plaintiff had significant improvement in his left

shoulder after an injection by Dr. Leupold, but continued to have frequent headaches

which were most likely migraines. (T. 248).

During the February 18, 1992 visit, Dr. Martinez found that plaintiff's

headaches had improved considerably, but that plaintiff still had pain in his left jaw

and left arm.  Dr. Martinez found that plaintiff had an abnormal electrodiagnostic

study which was evidence of a radiculopathy at the C5-C6 level of plaintiff's spine.

(T. 253).

Dr. Marra ordered that plaintiff have a Functional Capacity Evaluation, which

was performed on April 3, 2002 by Physical Therapy Associates of Schenectady. (T.

144-47).  The evaluation consisted of thirty-six separate tasks, and the occupational

and physical therapists concluded that plaintiff was capable of performing medium

work for an eight-hour day as defined in the U.S. Department of Labor Dictionary of

Occupational Titles. (T. 144).

Plaintiff has undergone many X-ray, cat scan, MRI, and nerve conduction

studies, the reports of which are located throughout the Administrative Transcript.

These examinations have been interpreted by the neurologists and neurosurgeons who

have examined and treated plaintiff. (T. 159, 162, 165, 166, 167, 168, 169, 170, 175,

178, 214, 215, 257, 258-60).  Plaintiff was also given steroid injections into plaintiff's lumbar spine on March 13, 2003 and May 20, 2003 by Dr. Edward Apicella. (T. 278-79).  Dr. Apicella reported that plaintiff reported his pre-operative pain to be the same before and after the procedures. (T. 278-79).

Plaintiff has been treated by a chiropractor, Steven Barr, who completed two Residual Functional Capacity (RFC) Assessments for plaintiff. (T. 188-91, 205-208). The first RFC was completed in May of 2003 in which Dr. Barr found that plaintiff could lift less than ten pounds, and stand or sit for less than two hours. (T. 188-89). Dr. Barr also found that plaintiff could never climb, balance, stoop, kneel, crouch, or crawl. (T. 189).  Dr. Barr noted a variety of medical problems, including a sprained back, spinal stenosis, a compression fracture, bilateral carpal tunnel syndrome and nerve damage in his arms, and TMJ. (T. 189-90).

Dr. Barr completed the second RFC in September of 2003. (T. 205-208).  Dr. Barr found that plaintiff could not engage in *any* lifting or carrying, and again stated that plaintiff had a multitude of medical conditions which essentially prevented him from working. (T. 205-208).  Dr. Barr also issued a letter-opinion on September 8, 2003, stating that plaintiff was one hundred percent disabled from his Home Depot work, and found that plaintiff's disability was permanent, and that plaintiff was essentially unemployable. (T. 276).

On August 1, 2002, Dr. Judith Bodnar, a non-examining physician, prepared an RFC Assessment. (T. 194-202).  She found that plaintiff could lift twenty pounds, and sit, stand, and walk for six hours each despite his degenerative disc disease. (T. 202).

Pushing and/or pulling were unlimited, there were "occasional" limitations on postural abilities, and no manipulative limitations listed. (T. 195-97).

The record contains a letter from Dr. Arthur Stevens, plaintiff's treating internist, addressed to the Chief ALJ at the Office of Hearings and Appeals in Albany, New York. (T. 265-66).  Dr. Stevens stated that plaintiff was a patient of his, and had numerous complaints over the past several years, including chronic back pain and carpal tunnel syndrome.  Dr. Stevens stated that plaintiff had several independent evaluations, one by Dr. Richard Holub in June 2003.[3]  In his letter, Dr. Stevens explained to the ALJ that the doctors office did not perform "exertional limitation testing" such as the ability to lift a particular amount of weight. (T. 265).

Dr. Stevens stated specifically that he did not disagree with Dr. Holub's evaluation that plaintiff could perform medium work.[4]  Dr. Stevens specifically stated that he suspected "that [plaintiff] could perform some job that did not require a great deal of physical activity." (T. 265).  Dr. Stevens also stated he did not doubt that plaintiff suffered from significant pain, but that plaintiff's medical problems were "certainly not" sufficient for Dr. Stevens to consider plaintiff permanently disabled. (T. 266)..

The Functional Capacity Evaluation performed on April 3, 2002 states that

---

[3] Dr. Holub's report is at (T. 131-34).

[4] Dr. Holub's report is a little confusing.  He actually states that plaintiff "would be able to return to work if he could function within the guidelines of the functional assessment which includes performing work in the medium physical demand level . . . ."  Based on this statement and the statement on the next page, it appears that Dr. Holub is stating that plaintiff could return to "work", meaning his previous work, if Home Depot had medium work available, because plaintiff was restricted to medium work. (T. 132-33).

plaintiff demonstrated exaggerated pain behavior which decreased as the evaluation progressed. (T. 146). The examiner also stated that plaintiff expressed an interest in attending VESID and that plaintiff was capable of lifting between seventeen and thirty pounds frequently. (T. 146). This Functional Capacity Evaluation had been requested by Dr. Marra, a treating neurosurgeon, who recommended a work hardening program and believed that plaintiff could perform some type of sedentary employment. (T.115-17).

After the ALJ's decision, plaintiff's counsel submitted additional evidence to the Appeals Council. (T. 294A-294S). This additional evidence has been included in a supplemental record in this case. The Appeals Council denied review, finding that the additional evidence did not provide a basis for changing the ALJ's decision. (T. 5-6).

This additional evidence includes two reports from Dr. Stevens, one dated June 14, 2004 and a letter from Dr. Stevens, dated October 18, 2004, stating that the letter is to "clarify" plaintiff's disability status. (T. 294A, 294B-94C). In Dr. Stevens's June 14, 2004 report, he states that plaintiff suffers from chronic upper back pain, low back pain, carpal tunnel syndrome, frequent headaches, anxiety, and depression. (T. 294B). Dr. Stevens also stated that plaintiff might have fibromyalgia. (T. 294B). Dr. Stevens concluded that "[i]t certainly seems that he is disabled and unable to perform any significant work because of the pain and discomfort and the need to change positions." (T. 294C).

In the June 2004 report, Dr. Stevens mentions a new FCE, completed by PT

Associates that "seems to support this position." (T. 294C).  Dr. Stevens also states,

however, that "[t]he medical evaluation was less supportive." (T. 294C).  Dr. Stevens

stated that plaintiff was wearing wrist braces for the carpal tunnel syndrome and was

going to consult "Dr. Whipple" for possible surgical relief. (T. 294B-94C).

In Dr. Stevens October 18, 2004 letter, he states that, in addition to plaintiff's

multiple physical problems, he was also being treated by Dr. Rudy Nydegger, a

psychologist. (T. 294A).  Dr. Stevens also mentions the new FCE completed by

Rosemary Trigger, suggesting that plaintiff would be limited only to sedentary work,

but could not sustain sedentary work for sufficient to work full-time. (T. 294A).  Dr.

Stevens states that because of the minimal number of hours that plaintiff would be

capable of working, plaintiff was "fully disabled." (T. 294A).

The FCE to which Dr. Stevens refers in his reports is also included in the

supplemental record. (T. 294O-94R).  Although the examiner, Physical Therapist

Rosemary Trigger, finds that plaintiff can perform sedentary work, she also finds that

he cannot sustain the performance of sedentary work for an 8-hour day. (T. 294O).  PT

Trigger also states that plaintiff cannot maintain static positions, including sitting,

without frequent rest breaks. (T. 294P).  PT Trigger stated that if sedentary

employment options were available, part-time, with the ability to frequently change

positions and with limited repetitive hand tasks, plaintiff could consider returning to

work, however, "realistically, there are very few jobs that would match this profile."

(T. 294P).

The supplemental evidence also contains two letters from Dr. Barr. (T. 294I,

294J).  One report was dated April 23, 2004 and the second was dated September 23, 2004. *Id.*  The September 23, 2004 letter states that plaintiff suffers from a significant amount of chronic pain. (T. 294I).  Plaintiff's diagnoses were cervical strain/sprain with associated muscle spasms and cervical radiculitis. *Id.*  Plaintiff had carpal tunnel syndrome and was wearing a back brace due to a compression fracture in his low back. *Id.*  He was walking with a cane, and Dr. Barr stated that these conditions adversely affected plaintiff's ability to bend, lift, push, pull, stand for extended periods, sit for extended periods, and that even rolling over in bed was difficult for him. *Id.*

Dr. Barr further stated that plaintiff suffered from a chronic limitation of range of motion in his cervical spine which affects his low back and that plaintiff also was suffering "some" depression due to his limitations.  Dr. Barr concluded that plaintiff was "unfunctional" and is "totally disabled." (T. 294I).

The additional evidence also included a report, dated November 19, 2004 from Dr. Richard Goodman, an orthopedic surgeon. (T. 294F-94H).  After examining plaintiff and reviewing many of his medical records, Dr. Goodman concluded that plaintiff was "currently totally disabled." (T. 294H).  There is also an RFC evaluation that might have been completed by Dr. Barr[5]. (T. 294K-94N).  Although parts of the document are not legible, basically, this RFC evaluation states that plaintiff is severely limited in all functions. *Id.*

---

[5] The signature and date of this evaluation are unclear, but since the "medical specialty" line next to the signature states "DC", the court assumes that it is Dr. Barr, the only chiropractor that plaintiff has been seeing. (T. 294N).

13

Finally, the supplemental evidence includes a letter, that appears to be dated in July of 2004, from Rudy Nydegger, Ph.D. (T. 294S).  The letter is in response to an inquiry from plaintiff's counsel.  Dr. Nydgegger states that he was currently treating plaintiff for a pain disorder, with physical and psychological factors, an adjustment disorder, with mixed anxiety and depressive mood. *Id.*  Dr. Nydegger stated that plaintiff's psychological state was being determined by plaintiff's pain, disability, and "related factors that derive from his medical condition." *Id.*

## DISCUSSION

1. **Disability Standard**

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months ...." 42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. §§ 404.1520 and 416.920 to evaluate disability insurance and SSI disability claims.

14

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; ... .  Assuming the claimant does not have listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920.

The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that his impairment prevents him from performing his past work, the burden then shifts to the Commissioner to prove the final step. *Bluvband v. Heckler*, 730 F.2d 886, 891 (2d Cir. 1984).

## 2.    <u>Scope of Review</u>

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.  In addition, an ALJ must set forth the crucial factors

justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).  A court's factual review of the Commissioner's final  decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988)(citations omitted).  It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Co. v. NLRB*, 197 U.S. 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258. However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983).

**3.    The ALJ's Decision**

Plaintiff makes various arguments that the ALJ did not consider certain

evidence and did not "clarify" various documents and medical reports in the record. Plaintiff's counsel then points to specific medical reports, and states that because the ALJ did not "discuss" these reports, his decision is not supported by substantial evidence. The court must first point out that the ALJ is ***not*** required to reconcile every shred of evidence in the record. *Edwards v. Barnhart*, 2007 U.S. Dist. LEXIS 15267 *26 (D. Conn. March 6, 2007)(citing *Miles v. Harris*, 645 F.2d 122, 124 (2d cir. 1981)). Genuine conflicts in the medical evidence are for the Commissioner to resolve. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)(citations omitted).

Most of the reports listed in plaintiff's brief are clinical medical reports. Plaintiff states that the ALJ never discussed, and thus failed to clarify an MRI that states that plaintiff has multi-level degenerative disc disease with neural foraminal narrowing. The ALJ does not "clarify" medical reports, he evaluates the reports and bases a determination of the extent of plaintiff's disability on the opinions of the doctors in the record and the record evidence as a whole. As long as the ALJ's findings are supported by substantial evidence, he does not have to mention every report that is in the record. *Edwards, supra.*

In this case, the ALJ concluded based on the reports of Dr. Marra, Dr. Holub, and Dr. Stevens, plus the 2002 Functional Capacity Evaluation, that plaintiff was able to perform work at a medium level of exertion for eight hours each day. (T. 16-17). Because plaintiff's previous work was classified as "medium work," the ALJ found that plaintiff could return to his former work as an electrical hardware sales associate. (T. 17, 19). The ability to perform one's past work is retained when one can perform

17

the functional demands of the job as he actually performed it *or* as it is generally performed in the national economy. *See Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003).

The court notes that there is discussion in the record that plaintiff's prior job at Home Depot required him to perform functions that were beyond medium work, however, as long as the classification of his job in the national economy requires only medium work, he may still be considered able to return to his prior work even if the specific job that he formerly held required greater capacity. *Id.* The ALJ analyzed the reports of plaintiff's own treating physicians, Dr. Marra, Dr. Holub, and Dr. Stevens in making this determination. (T. 17-18).

The court notes that the ALJ discounted Dr. Marra's statement that plaintiff could likely do some kind of work, "probably sedentary." (T. 17). The ALJ properly noted that Dr. Marra specifically stated that an FCE should be performed, and plaintiff should enter a "return to work program." (T. 115).

Although Dr. Holub found that plaintiff was disabled for ***workers' compensation*** purposes, there is no question that Dr. Holub did not find plaintiff disabled from performing any gainful activity. (T. 132). Dr. Holub states in one sentence of his June 4, 2002 report that plaintiff "is disabled." (T. 132). However, clearly he is referring to Worker's Compensation because a later section of the same report relies upon the FCE to state that plaintiff could return to a "medium work" position. (T. 132). The court would point out that the standards for "total" disability under New York State Workers' Compensation and Social Security are "markedly"

18

different, and a conclusion, whether from a treating physician or otherwise that specifies total disability for Workers' Compensation purposes ***is not binding*** under the Social Security Act. *Shiver v. Apfel*, 21 F. Supp. 2d 192, 197 (E.D.N.Y. 1998).  In any event, both Dr. Holub and Dr. Marra recommended work hardening programs.  Both obviously believed that plaintiff was capable of performing work.  Thus, the ALJ was justified in rejecting their opinions insofar as they implied that plaintiff could perform less than medium work.

The ALJ's decision is supported by substantial evidence since the record contains evidence from plaintiff's treating physician, a neurosurgeon, and a neurologist that support the ALJ's conclusion.  The ALJ specifically commented on the reports of a chiropractor, Steven Barr, and found that his opinions were contradicted by plaintiff's other treating physicians and by the FCE. (T. 17).  The court notes that under the regulations, as a chiropractor, Dr. Barr is not considered an acceptable medical source who can be used to establish an impairment. *See* 20 C.F.R. § 404.1513.  Chiropractors are listed under sources that "may be considered to show the severity of the impairment and how it affects the plaintiff's ability to work. *Id.* § 404.1513(d)(1).  Since Dr. Barr's opinion conflicted so dramatically from that of the treating physicians, the ALJ was justified, therefore, in rejecting Dr. Barr's opinion.

The ALJ then considered plaintiff's testimony and claims of disabling limitations and rejected them, based on the treating physicians' opinions. (T. 18).  The ALJ considered the results of the FCE evaluation of 2002, including the physical therapist's statement that plaintiff displayed "exaggerated pain behaviors, which

decreased as the evaluation progressed." (T. 18). This statement by the physical therapist supports the ALJ's finding that plaintiff was exaggerating his symptoms. The law is clear that "[a]n [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999)(quoting *Gallardo v. Apfel*, No. 96 CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. March 25, 1999)). The ALJ in this case acted consistently with the law and properly rejected plaintiff's claims of totally disabling symptoms.

## 3.     <u>Appeals Council</u>

In addition to plaintiff's arguments that the ALJ failed to "clarify" many items in the record, plaintiff's counsel also focuses on the decision of the Appeals Council and the Council's failure to remand plaintiff's case to the ALJ after plaintiff's attorney submitted the additional evidence for review. Thus, the court will discuss the Appeal's Council's determination and whether it is supported by substantial evidence.

The Second Circuit has specifically held that the "administrative record" includes new evidence that is submitted to the Appeals Council. *Perez v. Chater*, 77 F.3d 41, 44 (2d Cir. 1996). The Social Security regulations specifically provide that if the new evidence relates to a period before the ALJ's decision, the Appeals Council shall evaluate the entire record including the new and material evidence and then review the case if it finds that the ALJ's findings are contrary to the weight of the

evidence. *Id.* (citing 20 C.F.R. §§ 404.970(b), 416.1470(b)).

The issue in *Perez* was whether this new evidence became part of the administrative record if the Appeals Council denied review of the ALJ's decision, and the Second Circuit held that the evidence ***did*** become part of the record, regardless of whether the Appeals Council granted or denied review. *Id.* at 44-45.  In reaching this conclusion, the Second Circuit agreed with five other circuits, holding that the new evidence becomes part of the record, regardless of whether the Appeals Council grants or denies review. *Id.* at 45.

The court must also point out that the regulatory standard for "new evidence" presented to the Appeals Council is different from the statutory standard for a remand for "new evidence" under sentence six of 20 U.S.C. § 405(g).  When a plaintiff presents "new and material" evidence to a district court that has never been presented to the Commissioner, the court may only remand for the Commissioner to consider the new and material evidence if there is "good cause" for the failure to incorporate the evidence into the record in a prior proceeding.[6] 20 U.S.C. § 405(g).  The requirements

---

[6] The Second Circuit has developed a three-part showing that is required to support a sentence six remand for "new and material evidence" pursuant to section 405(g). *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988).  First, the evidence must be "new" and not merely cumulative of what is already in the record. *Id.* (citing *Szubak v. Secretary of Health & Human Services*, 745 F.2d 831, 833 (3d Cir. 1984)).

Second, in order for the new evidence to be "material," it must be ***both relevant to the claimant's condition during the time period for which benefits were denied and probative.***" *Id.* (citing *Cutler v. Weinberger*, 516 F.2d 1282, 1285 (2d Cir. 1975)).  The Second Circuit has also held that the concept of "materiality" requires a finding that there is a reasonable possibility that the new evidence would have influenced the Commissioner to decide the claimant's application differently. *See Jones v. Sullivan*, 949 F.2d 57, 60 (2d Cir. 1991).  Finally, the plaintiff must show that there is good cause for failing to present the evidence earlier. *Lisa v. Secretary of the Dep't of Health & Human Services*, 940 F.2d 40, 43 (2d Cir. 1991)(quoting *Tirado*, 842 F.2d at 597).

in the regulations for the consideration of new evidence by the Appeals Council are that the evidence must be new and material and that it must relate to the period on or before the ALJ's decision. 20 C.F.R. §§ 404.970(b), 416.1470(b).  There is no "good cause" requirement. *Id.*  The Second Circuit specifically mentioned this distinction in *Perez*. 77 F.3d at 45.

A review of the evidence submitted to the Appeals Counsel shows that the Appeals Council's decision affirming the ALJ was supported by substantial evidence. Although this new evidence appears to show that plaintiff's condition has gotten ***worse*** since the ALJ's decision, all the evidence post-dates the ALJ's decision and does not appear to relate to a time prior to the decision.

This finding is certainly supported by substantial evidence, since the same doctors and the same physical therapy center came to completely different conclusions about plaintiff's condition and functional abilities.  Additionally, in the supplemental evidence, it appears that plaintiff has now been diagnosed with some psychological impairments that were not before the ALJ.  Dr. Stevens changed his mind about plaintiff's abilities.  During October of 2003, Dr. Stevens stated that he did not consider plaintiff permanently disabled (T. 266), and eight or nine months later considered that plaintiff could not perform sedentary work based on the June 2004 FCE. (T. 294B).  Dr. Stevens specifically stated that he was relying on the Functional Capacity Evaluation which "seems" to imply that plaintiff is disabled, but that the "medical evidence" was less supportive.  (T. 294B).  Dr. Stevens later on stated that

---

The regulatory standard includes the concept of "new and material" evidence, but does not include the "good cause" requirement.

he did not believe a sedentary job existed which was part time only. (T. 294A).

The two FCE evaluations are also completely different.  In 2002, plaintiff was found to be capable of medium work, and in 2004, the same physical therapy center, albeit different physical therapists, found that plaintiff could not even sustain sedentary work for a sustained period of time and not for a full 8-hour day. (T. 144-47, 294O-94R).  Thus, this court finds that the Appeals Council finding that the supplemental evidence would not have changed the ALJ's decision is supported by substantial evidence.

This is further supported by plaintiff's brief which states on page three that plaintiff received a "Fully Favorable Decision on September 15, 2005 with an onset date of disability of ***December 10, 2003***." (Brief at p.3)(emphasis added).  Plaintiff states that he amended his onset date to December 10, 2003 (one day after the ALJ's decision), and presumably based on a new application obtained benefits on September 15, 2005.  Clearly, plaintiff's condition has deteriorated, and he is now receiving benefits based on a new application, with an amended onset date.  However, the decision in ***this*** case was supported by substantial evidence.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that the Commissioner's determination is **AFFIRMED**, and the complaint is **DENIED and DISMISSED.**

Dated: March 15, 2007

_____
Hon. Gustave J. DiBianco
U.S. Magistrate Judge